Argued and submitted August 26, affirmed December 7, 1994, petition for review denied February 28, 1995 (320 Or 587)

# STATE OF OREGON,
*Respondent,*

*v.*

# KENNETH HENDERSHOTT,
*Appellant.*

## (9202-30801; CA A78892)

887 P2d 351

Eric R. Johansen, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were

Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant was convicted of attempted aggravated murder,[1] ORS 163.095; attempted murder, ORS 163.115; attempted assault in the first degree with a firearm, ORS 163.185; fleeing or attempting to elude a police officer, ORS 811.540; reckless driving, ORS 811.140; robbery in the first degree, ORS 164.415; theft by extortion, ORS 164.075; unauthorized use of a motor vehicle, ORS 164.135; two counts of attempted burglary in the first degree, ORS 164.225; two counts of menacing, ORS 163.190; two counts of burglary in the first degree, ORS 164.225; and felon in possession of a firearm, ORS 166.270. He assigns error to the court's denial of his motion to dismiss on the basis of the state's failure to preserve evidence, the court's refusal to give a "less satisfactory evidence" instruction and the court's imposition of various sentences. We affirm.

Because defendant was convicted after a jury trial, we state the facts in the light most favorable to the state. *State v. Kolbe*, 115 Or App 268, 270, 838 P2d 612, *rev den* 315 Or 644 (1992). On February 7, 1992, Keene and her eight-year-old granddaughter drove to a Fred Meyer store and parked on the top level of the parking lot. As they were getting out of the car, defendant approached and demanded Keene's keys. When Keene refused to give him the keys, defendant pointed a gun at Keene's granddaughter and warned Keene that, if she did not hand him the keys, he would shoot the girl. Keene gave defendant the keys, and he drove off in her car.

Sergeant Parks was on patrol nearby when he received a broadcast about the carjacking. Parks saw a car proceed through a red light. When Parks approached the car, he saw that the license plate number matched that of the stolen car. Parks called for additional officers and activated

---

[1] ORS 161.405 provides, in part:

"(1) A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime.

"(2) An attempt is a:

"(a) Class A felony if the offense attempted is murder or treason.

"(b) Class B felony if the offense attempted is a Class A felony.

"(c) Class C felony if the offense attempted is a Class B felony."

his siren and lights. A high-speed chase then ensued through a residential neighborhood.

Defendant eventually slowed the car and jumped out. As he fled, defendant fired one round at Parks from about 20-30 feet. Parks fired back and chased defendant between houses. In order to avoid a gunfight alongside several houses, Parks ended his pursuit and requested that the block be sealed, evacuated and searched.

Defendant then ran to Boxler's house and demanded entry. Boxler saw defendant's handgun, refused entry, and called the police. Defendant tried unsuccessfully to shoot the lock off the door. Another witness, Like, saw defendant running down the street carrying a handgun.

The special emergency reaction team (SERT) began to search the area. After noticing that the lock on the back door of a house appeared to have been tampered with, SERT officers entered the house. One of the officers found defendant standing in the bathtub fully clothed. He later denied breaking into the house and explained that his former girlfriend gave him permission to stay there. The resident of the house denied knowing defendant or giving him permission to enter the house.

Before trial, the police inadvertently returned the stolen car to Keene before examining it for evidence or allowing defendant to make a forensic examination of the car. The car was sold at least twice, and both defendant and the state were unable to locate it before trial.

■ Defendant first contends that the state's failure to preserve or provide the car for inspection violated the discovery statutes, as well as his due process rights. We address the statutory issue first. Although his argument is difficult to discern, defendant appears to contend that, because the state lost the car and did not process it for evidence, he was denied various reports and statements of experts that would have been routinely generated had the state conducted a forensic examination of the car. ORS 135.815 provides, in part:

> "[T]he district attorney shall disclose to the defendant the following material and information *within the possession and control of the district attorney*:

"*\* \* \* \* \*

"(3) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons *which the district attorney intends to offer in evidence at the trial.*" (Emphasis supplied.)

Because the state did not process the car for evidence or undertake any forensic examination of it, no reports were made and, hence, there was no material or information to provide to the defense. Nothing the state did, or failed to do, violated defendant's statutory discovery rights. *See State ex rel Beach v. Norblad,* 308 Or 429, 781 P2d 349 (1989); *State v. Walton,* 311 Or 223, 236, 809 P2d 81 (1991).

■ Defendant also argues that the state's failure to preserve the car for forensic inspection violated his due process rights. He argues that forensic inspection of the car would have revealed the absence of any physical evidence connecting him to the car. Defendant, however, has failed to show that a forensic inspection of the car would have produced any favorable evidence. More than mere speculation is necessary to support defendant's due process claim. Absent a showing that favorable evidence was lost or that the state acted in bad faith in failing to preserve the car, defendant's due process claim must fail. *Arizona v. Youngblood,* 488 US 51, 109 S Ct 333, 102 L Ed 2d 281 (1988).

■■ In his second assignment, defendant contends that the court erred when it denied his request that the court give a less satisfactory evidence instruction. In general, we review the court's failure to give a jury instruction on evidentiary issues for abuse of discretion. *State v. Shelley,* 110 Or App 225, 228, 821 P2d 1111 (1991). Defendant requested that the court give the following instruction:

"When you evaluate the evidence, you may consider the power of the state to gather and produce evidence. If the evidence offered by the state was weaker and less satisfactory than other stronger or more satisfactory evidence which the state could have offered, then you should view the weaker and less satisfactory evidence with distrust."

■ In *State v. McNasser,* 77 Or App 215, 218, 712 P2d 170, *rev den* 300 Or 704 (1986), we held that a less satisfactory jury instruction need not be given unless

*"failure [to produce the evidence] could give rise to an inference that the evidence would be adverse to the party* — that is when it appears that the party may be trying to hide something." (Emphasis in original.)

The party offering the instruction has the burden of showing that the evidence not presented was reasonably available and that that evidence was stronger than other evidence offered. *State v. McDonnel*, 313 Or 478, 500, 837 P2d 941 (1992). Here, defendant has not shown that any evidence from the car is stronger than the testimony from several eyewitnesses who implicated him.

In his third assignment of error, defendant contends that the court committed multiple errors in failing to merge certain offenses, in imposing two gun minimums and in imposing certain consecutive and departure sentences. The state argues, and we agree, that defendant's arguments regarding the court's refusal to merge some of defendant's offenses and its imposition of various departure sentences and two gun minimums were not preserved at sentencing. Because those issues were not preserved, we do not address them. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1990).

■ We turn to the sentencing issues that were preserved. First, defendant asserts that the sentence imposed on the reckless driving charge should have been concurrent with, and not consecutive to, the sentence imposed on the attempting to elude charge. ORS 137.123(4) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of a commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or

harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous or uninterrupted course of conduct."

Defendant argues that the reckless driving and elude charges were qualitatively the same, because he was "simply trying to avoid arrest." We disagree with defendant's characterization of his actions. While attempting to elude the police, defendant caused a high-speed chase through a residential neighborhood and ran several stop signs. That demonstrated a willingness to commit more than one offense and created a significant risk of injury or death to persons in the neighborhood.

■    Next, defendant contends that consecutive sentences should not have been imposed for the robbery, unauthorized use and menacing associated with defendant's initial gun point carjacking. He asserts that, although his actions demonstrated an intent to rob Keene of her car, his actions did not demonstrate an intent to harm Keene's granddaughter. We disagree. At the time defendant committed the carjacking, he pointed his handgun at Keene's grandchild and threatened to kill her. Defendant's act of terror caused a greater harm than that caused when he robbed Keene of her car.

■    Defendant also argues that the sentence imposed on the menacing charge involving Boxler should have been imposed concurrently with, not consecutive to, the sentence on the attempted burglary of the Boxler home. He reasons that, when he demanded entry and shot the lock on Boxler's door, he only intended to gain entry and did not intend to commit any other offense. Defendant is wrong. When he demanded entry outside of the locked door and shot the lock, he created a qualitatively higher risk of harm to Boxler over and above the attempted burglary.

■    Finally, defendant argues that the sentence imposed on the charge of felon in possession of a firearm should have been imposed concurrently with all of the other related charges involving a gun. We agree with the state's argument that defendant's actions after arming himself demonstrate a willingness to commit crimes far more serious than possession of a gun.

Affirmed.