145 P.3d 245 (2006)
208 Or. App. 409
STATE of Oregon, Respondent,
v.
Stuart Ross ANDERSON, III, Appellant.
04FE0629MA; A125668.
Court of Appeals of Oregon.
Argued and Submitted July 31, 2006.
Decided October 4, 2006.
*246 Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.
Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Before HASELTON, Presiding Judge, and BREWER, Chief Judge, and ROSENBLUM, Judge.
HASELTON, P.J.
Defendant appeals from a judgment of conviction on two counts of first-degree robbery, ORS 164.415, two counts of second-degree robbery, ORS 164.405, one count of second-degree kidnapping, ORS 163.225, one count of attempted second-degree kidnapping, ORS 163.225; ORS 161.405, one count of second-degree assault, ORS 163.175, and one count of unlawful use of a weapon, ORS 166.220. Defendant raises an unpreserved constitutional challenge, under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to the imposition of consecutive sentences for some of his crimes. We reject that challenge without further discussion. See State v. Fuerte-Coria, 196 Or. App. 170, 100 P.3d 773 (2004), rev. den., 338 Or. 16, 107 P.3d 26 (2005). Defendant also assigns error, on statutory grounds, to the trial court's imposition of a consecutive sentence on the second-degree assault conviction. In particular, defendant contends that the consecutive sentence on that conviction was unlawful because his commission of assault was merely incidental to his commission of robbery and did not indicate a "willingness to commit more than one criminal offense[.]" ORS 137.123(5)(a). For the reasons that follow, we reject that contention and, consequently, affirm.
The material facts are not in dispute. On August 10, 2003, defendant entered a fabric store in Bend. After wandering around for a few minutes, defendant approached a cashier, Jennifer McInnes, and, under his breath, mumbled, "Put the money * * * in the bag. Do it quickly, or I'll hurt you." He proceeded to tell her several times that he had a gun and that he would kill her if she gave him a "hard time."
After McInnes gave defendant the money he had demanded, defendant left the store and walked across the parking lot toward Timber's Tavern. One of the tavern's employees, Nichols, was outside talking with a friend. Nichols's truck was parked close to where he was standing. Defendant attempted to enter Nichols's truck through the passenger side door and began demanding that Nichols give him a ride. Nichols refused and physically dragged defendant out of the truck.
Defendant started to walk away from Nichols and, as he did so, one of the employees at the fabric store yelled to Nichols, asking him to stop defendant because he had just robbed their store. Nichols began walking after defendant, and, just as he reached defendant, one of the store employees called out, "[H]e said he had a gun." Nichols, in response, paused and turned his headand, when he did so, defendant pulled a heavy "rubber mallet" from his bag, swung at Nichols, and hit him in the head. Nichols fell to the ground unconscious. Defendant then *247 continued walking away from the area. Shortly thereafter, the police apprehended defendant.
As pertinent to this appeal, the indictment charged defendant as follows:
"(Count 3  [first-degree robbery])[[1]] That the said defendant, on or about the 10th day of August 2003, in Deschutes County, Oregon, did unlawfully and knowingly commit theft of United States currency, and in the course of committing the theft used physical force on [Nichols], with the intent of preventing resistance to the said defendant's taking of the property, and attempted to cause serious physical injury to [Nichols],
"(Count 4  [first-degree robbery]) That the said defendant, on or about the 10th day of August 2003, in Deschutes County, Oregon, did unlawfully and knowingly commit theft of United States currency and in the course of committing the theft the said defendant used physical force on [Nichols], with the intent of preventing resistance to his taking of the property and he used a dangerous weapon, to wit: a mallet,
"* * * * *
"(Count 9  [second-degree assault])[[2]] That the said defendant, on or about the 10th day of August 2003, in Deschutes County, Oregon, did unlawfully and intentionally cause physical injury to [Nichols] by means of a dangerous weapon, to-wit: a mallet[.]"
In sum, the state alleged two theories of first-degree robbery: (1) Defendant attempted to prevent resistance to theft by attempting, but failing, to inflict "serious physical injury" upon Nichols, ORS 164.415(1)(c); and (2) defendant attempted to prevent resistance to theft by using a "dangerous weapon" (the mallet) against Nichols, ORS 164.415(1)(b). The state also alleged that, by intentionally causing Nichols to suffer physical injury by means of a dangerous weapon, defendant committed second-degree assault under ORS 163.175(1)(b).
Defendant pleaded not guilty and, after a jury trial, he was convicted on eight of the 10 charged counts.[3] The trial court sentenced defendant to concurrent terms on both of the first-degree robbery convictions.[4] The state argued that the sentence for second-degree assault (Count 9) should be imposed consecutively to all other counts pursuant to ORS 137.123(5)(a).[5] As explained more fully below, that statute allows a trial court to impose a consecutive sentence if the crime was "not merely an incidental violation" committed during the course of another offense, but, instead, indicates the "defendant's willingness to commit more than one criminal offense[.]" In particular, the state contended:

*248 "Assault II is not a lesser-included of Robbery I, and it shows the defendant's willingness to engage in more than one crime. It's justthey're not part and parcel to each other. He could commit the Robbery I without committing the Assault II."
Ultimately, the trial court agreed with the state: "You can commit a robbery without assaulting the victim. It's a separate and distinct and more serious criminal act. It will be a consecutive sentence."
On appeal, defendant contends that, given the circumstances of his crimes, ORS 137.123(5)(a) does not authorize the imposition of a consecutive sentence for second-degree assault. In particular, defendant contends that "[t]he record does not contain discrete facts that support a finding that defendant willingly committed assault in the second degree beyond incidentally completing robbery in the first degree[.]" That is, as we understand it, defendant posits that, because his conduct in hitting Nichols with the rubber mallet was undertaken with the intent of "preventing resistance" to defendant's theft of property from the fabric store, that assault was "merely incidental" to the robbery and did not evince a willingness to commit a separate crime. As support for that proposition, defendant invokes State v. Warren, 168 Or.App. 1, 5 P.3d 1115, rev. den., 330 Or. 412, 8 P.3d 220 (2000).
The success of defendant's argument depends on the proper application of ORS 137.123(5)(a), a provision that is frequently invoked but rarely construed. ORS 137.123 provides, in pertinent part:
"(4) When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court complies with the procedures set forth in subsection (5) of this section.
"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:
"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense[.]"
Paragraph (5)(a) is, in many ways, amorphous  and perhaps inscrutable. What does it mean to say that one offense was "not merely an incidental violation" committed in the course of another, more serious crime? What is the proper relationship between the phrases "not merely an incidental violation" and "but rather was an indication of defendant's willingness to commit more than one criminal offense"? (Emphasis added.) Is one merely the obverse of the otherand, if so, why include both? If not, what is the difference? The statute's history and evolution suggest at least partial answers to some of those questions.
Before 1985, the law of consecutive sentencing in Oregon was largely judge made. State v. Jones, 250 Or. 59, 61, 440 P.2d 371 (1968) ("It is an inherent power of the court to impose sentences, including the choice of concurrent or consecutive terms when the occasion demands it."); State v. Linthwaite, 52 Or.App. 511, 525, 628 P.2d 1250 (1981), rev'd, 295 Or. 162, 665 P.2d 863 (1983) ("[L]egislative intent in these cases is, at best, unclear, and, at worst, non-existent. Trial and appellate courts have been struggling with these questions for a decade or more."). In every legislative session between 1979 and 1983, bills prescribing standards for the imposition of consecutive sentences were proposed but failed. See generally Testimony, House Judiciary Committee, HB 2331, May 27, 1985, Ex. A (statement of Deputy Attorney General William F. Gary).
Finally, in 1985, three alternatives were proposed: a Senate bill, Senate Bill (SB) 257 (1985), a House bill, House Bill (HB) 2331 (1985), and a ballot measure, Ballot Measure 10 (1986) (filed with the Secretary of State in April 1985). Originally, all three proposals contained the same operative language found in paragraph (5)(a) of the present statute. That is, under each version, trial courts were authorized to impose consecutive sentences *249 when one crime was not merely incidental to the other but, rather, indicated a willingness to commit more than one offense. Eventually, the Senate bill was not pursued, and the House bill was modified to delete the "willingness to commit more than one criminal offense" language, which was viewed as unnecessary and potentially misleading. Minutes, House Committee on Judiciary, Subcommittee # 1, HB 2331, May 29, 1985, 11-12 (statements of Steve Jacobsen, Metropolitan Public Defenders, and Deputy Attorney General William F. Gary); see also Minutes, Senate Committee on Judiciary, SB 257, May 15, 1985, 21 (statement of Sen. Margie Hendriksen). Thus, as ultimately enacted, Or. Laws 1985, ch. 722, § 2, HB 2331 authorized the imposition of consecutive sentences for crimes arising from a single and uninterrupted course of conduct where "[t]he criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime[.]" That statute was codified as ORS 137.122 (1985).
Meanwhile, the proposed ballot measure continued in its original form, including the "willingness" language. Ballot Measure 10; Minutes, House Committee on Judiciary, Subcommittee # 1, May 29, 1985, 10-16; see also State v. Crotsley, 308 Or. 272, 276 n. 3, 779 P.2d 600 (1989). In 1986, the electorate approved Ballot Measure 10, and its consecutive sentencing provision was codified as ORS 137.123 (1987). Thus, there were at the same time two consecutive sentencing statutes with identical operative language with one exception: ORS 137.123(4)(a) (1987) included the "willingness to commit" language, but ORS 137.122(4)(a) (1985) did not. Finally, in 1991, the legislature repealed ORS 137.122 as having been effectively superseded by the initiative. Or. Laws 1991, ch. 67, § 28.[6]
Nothing in ORS 137.123 or the now-defunct ORS 137.122 defines the phrase "merely incidental." Nor does anything in the statutory context or legislative history[7] provide guidanceexcept to the extent that, as ORS 137.123(5)(a) is framed and phrased, "merely incidental" might be understood to be the obverse of "defendant's willingness to commit more than one criminal offense."
Still, our own decisions afford some guidance. We have, with one exceptionWarren, which we address belowconsistently sustained the application of ORS 137.123(5)(a) to justify the imposition of consecutive sentences for offenses that were factually closely related. See, e.g., State v. Rojas-Montalvo, 153 Or.App. 222, 957 P.2d 163, rev. den., 327 Or. 192, 961 P.2d 218 (1998) (the defendant's possession of large quantity of cocaine, along with implements of distribution, was "not merely `incidental'" to the crime of constructive delivery of cocaine); State v. Hendershott, 131 Or.App. 531, 887 P.2d 351 (1994), rev. den., 320 Or. 587, 890 P.2d 993 (1995) (reckless driving was "not merely incidental" to attempting to elude); State v. Atkinson, 98 Or.App. 48, 777 P.2d 1010 (1989) (inmate's possession of a weapon was "not merely incidental" to attempted assault on corrections officer).
From those cases, we can glean several instructive, albeit hardly conclusive, principles. First, the determination of whether a defendant evinced the requisite "willingness to commit more than one criminal offense" is, as with any other determination of culpable mental states, innately factual. That is, that determination is a product of the "discrete facts" of each case and inferences reasonably derived from those facts. Warren, 168 Or. App. at 6, 5 P.3d 1115; see also id. at 5, 5 P.3d 1115 (noting that standard of appellate review for imposition of consecutive sentences pursuant to ORS 137.123 is "for errors of law appearing in the record or * * * *250 whether there is evidence to support the trial court's findings").
Second, the fact that two crimes share a common motivation, or that one crime motivates the other, is not dispositive of whether one is "merely incidental" to the other. Hendershott is exemplary. There, the defendant, who was involved in a high-speed chase through a residential neighborhood during which he ran several stop signs, was convicted of reckless driving and attempting to elude the police. 131 Or.App. at 534, 537, 887 P.2d 351. In challenging the imposition of consecutive sentences for those offenses, the defendant argued that "the reckless driving and elude charges were qualitatively the same, because he was `simply trying to avoid arrest.'" Id. at 537, 887 P.2d 351. We rejected that argument, concluding, inter alia, that the defendant's actions "demonstrated a willingness to commit more than one offense[.]" Id.; see also Rojas-Montalvo, 153 Or.App. at 225, 957 P.2d 163 (although the defendant possessed large quantities of cocaine for the purpose of distribution, his possession was not "merely `incidental'" to constructive delivery).
Third, some of our decisions have suggested, without amplification, that the fact that the defendant could have committed one offense without committing the other demonstrates a willingness to commit both. For example, in State v. Sumerlin, 139 Or.App. 579, 913 P.2d 340 (1996), the defendant was convicted of reckless driving and driving under the influence of intoxicants. We explained:
"Defendant need not have driven in an intoxicated state to have committed the offense of reckless driving; conversely, he need not have been speeding to have committed the offense of DUII. The offenses were not merely `incidental' to one another."
Id. at 589, 913 P.2d 340; see also Rojas-Montalvo, 153 Or.App. at 225, 957 P.2d 163 ("A defendant need not possess a controlled substance in order to be found guilty of delivery[.]").
As an abstract proposition, that sort of approach seems tautological: If, in fact, a defendant could not commit one crime without necessarily committing the other against the same victim, the convictions must merge, yielding a single sentence. See ORS 161.067(1) (providing that there are "separately punishable offenses" when "the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not"). Conversely, construing ORS 137.123(5)(a) as permitting the imposition of consecutive sentences anytime a defendant "need not" have committed one offense while committing the other would mean that consecutive sentences could be imposed in every case involving multiple (nonmerged) convictions arising from a continuous and uninterrupted course of conduct. In that event, ORS 161.067(1) and ORS 137.123(5)(a) would be, effectively, congruent. Accord Warren, 168 Or.App. at 11 n. 1, 5 P.3d 1115 (Brewer, J., concurring in part and dissenting in part) (noting that "Rojas-Montalvo, by emphasizing differences between the elements of the offenses for which the defendant was convicted, could be read to make virtually indistinguishable the tests for merger of convictions and imposition of consecutive sentences").
We qualified the foregoing paragraph with "[a]s an abstract proposition" because our decisions applying that approach have been, albeit implicitly, circumstantially concrete and pragmatic. Sumerlin, for example, was not an exercise in "element matching." Rather, our thrust and tone there was more generalviz., that DUII and reckless driving are substantially different offenses; that, as a practical, "real world" matter, there are many ways to commit one without the other; and that, in the totality of the circumstances, defendant could easily have committed either crime without committing both. That is, the defendant did not have to commit both offensesand the fact that he committed both evinced a willingness to do just that. See Sumerlin, 139 Or.App. at 589, 913 P.2d 340 ("By speeding while driving drunk, defendant showed a willingness to commit both reckless driving and DUII."); see also Warren, 168 Or.App. at 6, 5 P.3d 1115 (noting that, in Rojas-Montalvo, the defendant's possession of "a small scale, a box of baggies, a pager, *251 and some small plastic bindles containing cocaine[,]" in addition to the possession of the large quantity of cocaine, demonstrated the defendant's willingness to commit discrete offenses).
Application of those principles becomes especially challenging where, as here, culpability for multiple crimes is ultimately predicated on a single, common act (e.g., defendant's use of the mallet). Two hypotheticals may serve to illustrate our understanding of the scope and application of ORS 137.123(5)(a) in such circumstances and to frame the balance of our analysis:
A shoots at B, intending to kill her, but misses and, instead, wounds C, a bystander. A is convicted of both attempted murder with respect to B and assault with respect to C.
D shoplifts some items and, when E, the clerk, tries to prevent the theft, D becomes enraged and shoots E in the head, but E survives. D is convicted of both first-degree robbery and attempted murder.
Both scenarios involve multiple convictions predicated on a single gunshot. And yet, assuming no other qualifying circumstances, they support diametrically different outcomes under ORS 137.123(5)(a).
The first hypothetical does not evince "a willingness to commit more than one criminal offense": A sought to kill B and only B; the injury to C was purely coincidental.[8] Conversely, a court, in imposing sentence, could properly determine that the second scenario evinces the requisite "willingness." To paraphrase Sumerlin, one "need not" attempt to murder someone in the course of a first-degree robberyand, given D's rage, D's willingness not only to commit and complete the robbery but also to kill E could be inferred from the totality of the circumstances.
We return to this case. Defendant argues that the imposition of a consecutive sentence on the assault charge was impermissible because a single act, the act of hitting Nichols with the mallet, forms the basis of both the robbery convictions and the assault conviction. That is, defendant's swinging and hitting Nichols was (1) the use of a dangerous weapon during a theft, ORS 164.415(1)(b); (2) the attempt to cause serious physical injury during a theft, ORS 164.415(1)(c); and (3) the use of a dangerous weapon causing physical injury, ORS 163.175(1)(b). Defendant argues that this case is controlled by Warren, in which we held that the trial court had erred in imposing a consecutive sentence under ORS 137.123(5). We disagree.
In Warren, the defendant "pulled a gun out and shot the victim in the back of the head at close range." 168 Or.App. at 3, 5 P.3d 1115. He was convicted of attempted murder with a firearm and first-degree assault, and the trial court imposed a consecutive sentence under ORS 137.123(5) on the assault conviction. On appeal, with one judge dissenting, we reversed the imposition of the consecutive sentence. Id. at 6-7, 5 P.3d 1115. As pertinent here, with respect to ORS 137.123(5)(a), we concluded that the record was legally insufficient to establish the defendant's "willingness to commit more than one criminal offense" because the record established only the defendant's willingness to murder the victim:
"Apparently, the trial court inferred from the fact that because defendant committed the crime of attempted murder, he also had the willingness to cause serious physical injury to the victim as well. The problem with the trial court's finding is that it could not reasonably infer from the fact that defendant shot the victim in the head at close range that defendant intended to kill the victim and that he acted volitionally to cause the victim serious physical injury. If defendant intended to kill the victim by the single shot to the victim's head, he could not have had the intent only to cause him serious physical injury. The statute requires more than an incidental violation of a separate statutory provision in the course of a commission of a more serious crime as a basis for a consecutive sentence. The firing of a single shot into the victim's *252 head by defendant could demonstrate a willingness to commit the crime of murder, but in the absence of findings of other facts that demonstrate a willingness to commit the additional offense of first-degree assault, it was error to impose consecutive sentences under ORS 137.123(5)(a)."
Warren, 168 Or.App. at 5, 5 P.3d 1115 (emphasis in original).
Thus, in Warren, we concluded that, at least on that record, the intent to kill and the intent "only to cause [the victim] serious physical injury" were mutually exclusive. Consequently, without further proof, the defendant's conduct establishing his willingness to commit murdershooting the victim in the back of the head at close rangecould not also establish his willingness to commit first-degree assault. But see Warren, 168 Or.App. at 10, 5 P.3d 1115 (Brewer, J., concurring in part and dissenting in part) (noting that the jury, in convicting the defendant of both crimes, necessarily found that the defendant intended "both to kill and to seriously injury the victim").
This case resembles Warren (and the hypotheticals posited above) in that defendant's crimes involved the single common act of striking Nichols with the mallet. However, this case is materially distinguishable from Warren in that there is no mutual exclusivity with respect to defendant's intent in engaging in that conduct. That is, at least as an abstract proposition, (1) defendant, in using the mallet, could have been willing both to cause serious physical injury to Nichols and, failing that, to at least cause physical injury; or (2) alternatively, defendant could have been willing not only to use the mallet but, beyond that, to inflict physical injury with the mallet.
The question reduces to whether the record in this case permitted the trial court, in imposing sentence, to infer such a multiple "willingness." Bearing in mind our deferential standard of review, see ___ Or.App. at ___, ___ P.3d at ___, we conclude that the court did not err. We note, in particular, that, just as Nichols caught up with defendant and was reaching out to stop him, another person called out that defendant had a gun, causing Nichols to pause and turn his head. At that point, defendant pulled out the mallet and struck Nichols in the head.
The sentencing court could reasonably infer that, especially given Nichols's pause and momentary inattention, defendant had a number of options: He could have kept fleeing; he could have brandished the mallet; he could have hit the momentarily vulnerable victim with the mallet so as to discourage his pursuit, but in a manner that did not present the risk of serious physical injurye.g., in the arm, legs, or back, but not in the head. Insteadand particularly instead of the last option (which would also have constituted first-degree robbery under ORS 164.415(1)(b))defendant hit the momentarily defenseless Nichols in the head, attempting to cause serious physical injury. The trial court, in imposing sentence, could reasonably infer that that conduct evinced a choice, a "willingness," to commit second-degree assault in addition to first-degree robbery.[9] Accordingly, the court did not err in imposing a consecutive sentence on defendant's conviction for second-degree assault.
Affirmed.
NOTES
[1] ORS 164.395 defines third-degree robbery, in part:

"(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:
"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking[.]"
ORS 164.415 defines first-degree robbery, in part:
"(1) A person commits the crime of robbery in the first degree if the person [commits third-degree robbery] and the person:
"* * * * *
"(b) Uses or attempts to use a dangerous weapon; or
"(c) Causes or attempts to cause serious physical injury to any person."
[2] ORS 163.175 defines second-degree assault, in part:

"(1) A person commits the crime of assault in the second degree if the person:
"* * * * *
"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon[.]"
[3] The trial court granted defendant's motion for a judgment of acquittal with respect to the other two counts.
[4] Defendant does not assert on appeal that those two convictions, based on different theories and involving the same victim, should have been merged.
[5] The second-degree assault conviction did not merge into either of the robbery convictions because neither of the robbery counts required proof of actual physical injury by means of a dangerous weapon. Rather, Count 3 required proof of an attempt to cause serious physical injury, and Count 4 required proof of use of a dangerous weapon (without any requirement of resulting physical injury).
[6] In 1995, the legislature added another paragraph to ORS 137.123, so that the original paragraph (4)(a) is now numbered paragraph (5)(a). Or. Laws 1995, ch. 657, § 2.
[7] The "legislative" history of a ballot measure includes all the materials that were available to the voters and that disclose the public's understanding of the provision, including, for example, the voters' pamphlet. Ecumenical Ministries v. Oregon State Lottery Comm., 318 Or. 551, 560 n. 8, 871 P.2d 106 (1994).
[8] Of course, notwithstanding the inapplicability of paragraph (5)(a), a consecutive sentence could be imposed under paragraph (5)(b) because defendant's conduct "caused * * * loss, injury or harm to a different victim than was caused * * * by the other offense * * *."
[9] In that regard, the circumstances here are directly analogous to those in the second hypothetical posited above. See ___ Or.App. at ___, ___ P.3d at ___.