**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 25 2010



MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| NICHOLAS W. GIVENS, | No. 09-35465 |
| Petitioner - Appellant, | D.C. No. 1:07-cv-00829-PA |
| v. | |
| JEAN HILL, Supintendent at SRCI, | MEMORANDUM* |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, District Judge, Presiding

Argued and Submitted June 8, 2010
Portland, Oregon

Before: FERNANDEZ, McKEOWN and PAEZ, Circuit Judges.

Nicolas W. Givens (Givens) appeals the denial of habeas relief by the

district court on the ground that he was denied effective assistance of counsel.

Givens was convicted of kidnapping in the first degree (Or. Rev. Stat. § 163.235),

robbery in the first degree (Or. Rev. Stat. § 164.415), and assault in the second

---

 * This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

degree (Or. Rev. Stat. § 163.175) and sentenced to 180 months following a bench trial. Givens argues that he received ineffective assistance of counsel at trial and at sentencing in violation of the Sixth Amendment when his attorney failed to investigate and present information regarding his mental illness and receipt of electroconvulsive therapy ("ECT"). Although counsel's performance was deficient, Givens cannot show prejudice. Consequently, we affirm the denial of habeas relief.

We have jurisdiction under 28 U.S.C. § 2253, and we review de novo the district court's denial of a petition for a writ of habeas corpus. Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a writ of habeas corpus may be granted only if the state court's decision "was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

First, Givens argues that the state post-conviction court's conclusion that defense counsel provided constitutionally adequate assistance at trial is contrary to or involved an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, we consider whether (1) his counsel's performance fell

below an objective standard of reasonableness, and (2) whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687.

Givens argues that defense counsel's performance fell below objective standards of reasonableness when counsel failed to contact Dr. Maletzky, his treating physician at Pacific Gateway Hospital, regarding the ECT treatments he received in the days leading up to the incident. Evidence of Givens's ECT treatments and the therapy's related side-effects, Givens argues, would have supported a diminished capacity defense. See Or. Rev. Stat. § 161.300.

With respect to the first prong of Strickland, we agree that Givens's counsel's performance was objectively unreasonable. Defense counsel knew, based on his own expert's report, that Givens had a long and troubling history of mental illness, had been released following a month-long commitment from a mental health hospital the night before the crime, and had received seven ECT treatments over the course of the two weeks preceding the crime. "[A]ny reasonably competent attorney would have realized that pursuing these leads was necessary to making an informed choice among possible defenses . . . ." Wiggins v. Smith, 539 U.S. 510, 525 (2003). Yet, "despite tantalizing indications in the record" that Givens may have been operating at diminished capacity at the time of

3

the crime, defense counsel never contacted Dr. Maletzky nor investigated the effects of ECT. Stankewitz v. Woodford, 365 F.3d 706, 720 (9th Cir. 2004). His failure to do so was unreasonable both because it fell below what defense counsel conceded was standard practice and because it was insufficient "in light of what counsel actually discovered in the . . . records." Wiggins, 539 U.S. at 525.

In light of the other substantial evidence admitted at trial, however, we agree with the district court that Givens was not prejudiced by his counsel's deficient performance. Under AEDPA's standard, the state court's decision was not an unreasonable application of Strickland, and we affirm the district court's denial of this claim.

Givens further argues that counsel's assistance was constitutionally inadequate at sentencing. At the sentencing hearing, the court stated that unless it "heard something truly startling," the court would sentence Givens to 180 months. The default under Oregon law is that sentences arising out of a continuous and uninterrupted course of conduct run concurrently. Or. Rev. Stat § 137.123(4). Here, however, the trial court found that Givens had exhibited the requisite "willingness to commit more than one criminal offense" under Or. Rev. Stat. § 137.123(5)(a) and that his pertinent offense "caused or created a risk of causing greater or qualitatively different" injury to the victim under Or. Rev. Stat.

4

§ 137.123(5)(b). Accordingly, the trial court exercised its discretion and ordered that the robbery and kidnapping convictions run consecutively and that the sentence for assault run concurrently, for a total sentence of 180 months. See State v. Trice, 976 P.2d 569, 571 (Or. Ct. App. 1999).

Defense counsel presented no evidence of Givens's mental illness at sentencing. However, even if counsel had presented evidence of Givens's contemporaneous treatment with ECT and its severe side-effects, Givens still would have met the condition for the discretionary imposition of a consecutive sentence at § 137.123(5)(b). Under AEDPA's "highly deferential" standards of review, Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), we cannot conclude that the state court unreasonably applied Strickland by holding that there was no reasonable possibility the additional evidence would have altered the sentencing judge's exercise of discretion. Consequently, we affirm the denial of Givens's sentencing claim.

Givens further argues that the district court erred in denying his request to expand the state court record. Givens is not entitled to an expansion of the record or evidentiary hearing unless he diligently attempted to develop the evidence in state court, but was unable to do so. See Williams v. Taylor, 529 U.S. 420, 432 (2000). Because the factual predicate for Givens's request was available at the

5

time of the state post-conviction proceeding, and he did not diligently seek to expand the record at that time, we affirm the district court's denial of this request. See id. at 435.

AFFIRMED.



No. 09-35465.

PAEZ, Circuit Judge, concurring and dissenting:

I concur in the court's disposition of Givens's claim of ineffective assistance of counsel (IAC) at trial. I respectfully dissent, however, from the denial of habeas relief as to Givens's IAC sentencing claim. In my view, there is a reasonable probability that had the trial court been presented with evidence of Givens's contemporaneous electroconvulsive treatments (ECT) and their severe-side effects, the court would not have exercised its discretion to impose consecutive sentences under Oregon Revised Statute section 137.123(5). *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

As the majority notes, the default under Oregon law is that sentences arising out of a continuous and uninterrupted course of conduct will run concurrently. *See* Or. Rev. Stat § 137.123(4). Here, however, the trial court found that Givens's offense conduct met the requirements of Oregon Revised Statute section 137.123(5). The trial court, however, never had the benefit of *any* evidence regarding Givens's then recent ECT treatments.

Unbeknownst to the court at sentencing, Givens was released, against the advice of his doctors, from Pacific Gateway Hospital just hours before he assaulted the victim. An affidavit from Givens's treating physician reported that "Givens

1

received seven ECT treatments" from March 14 to March 24.  And that after he was released, Givens committed the assault, "just two days after his last ECT treatment."  The doctor further explained that because Givens's "ex-girlfriend agreed to sign him out and supervise him for the next week, we released him. . . . Had we known he would not have been supervised, we would not have released him because of the temporarily confused state the ECT treatments had brought upon him."

With respect to Givens's ability to form the requisite intent at the time of the crime, the treating physician explained that

> 72 hours after his last ECT treatment, Mr. Givens was still suffering from the effects of the series of ECT treatments. The lingering effects of those treatments would have included, among other things, confusion and memory loss. . . . While the ECT may not have hampered his ability to tell right from wrong, his ability to appreciate the consequences of his actions would have been severely impaired.  It would have been difficult for Mr. Givens to appreciate the consequences of his actions.  His capacity for executive functions, including decision making, would have been impaired on the day in question.  During that time, his memory for day-by-day or moment-by-moment events would also have been impaired.  His thought process would not have been sequential.

The ECT evidence is sufficiently startling and the therapy's mental side-effects sufficiently severe, that there is a reasonable probability that evidence of the

2

treatments would affect a trier of fact's assessment of the threat Givens posed to others as well as the benefit to Givens of additional custody time. There is also a reasonable probability that the evidence of Givens's ECT treatments would affect a trier of fact's determination as to whether Givens was capable at the time of the incident of forming the requisite mens rea to willingly commit more than one criminal offense, as required under Oregon Revised Statute section 137.123(5)(a). *See State v. Anderson*, 145 P.3d 245, 249 (Or. Ct. App. 2006) (noting that "'willingness to commit more than one criminal offense' is, as with any other determination of culpable mental states, innately factual"). Finally, although circumstances support each of the section 137.123(5) findings, the court had discretion not to make those findings. Had the court been fully informed about the ECT treatments and the lingering effects of such treatments, there is a reasonable probability that the court would not have imposed consecutive sentences.

In light of the statutory default for concurrent sentences and the discretion the court had in imposing consecutive sentences, counsel's failure to present such evidence "undermine[s] confidence in the outcome" of the sentence proceeding. *Strickland*, 466 U.S. at 694. For these reasons, I would conclude that Givens was prejudiced by his counsel's failure to present such evidence and reverse the district court's denial of habeas relief on this claim.

3