Submitted November 12, 2020, affirmed March 22, 2023

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KEVIN SCOTT COPELAND,
*Defendant-Appellant.*

### Josephine County Circuit Court
### 16CR16934; A169372

527 P3d 771

Defendant appeals judgments of conviction for murder with a firearm, ORS 163.115 and ORS 161.610, and felon in possession of a firearm, ORS 166.270(1). Defendant assigns error to the trial court's failure to give Uniform Criminal Jury Instruction (UCrJI) 1030, the less-satisfactory-evidence jury instruction. The challenge concerns the state's accidental pretrial destruction of the murder weapon before the defense could test it. The state responds that defendant failed to satisfy the factual predicates for the 1030 instruction because defendant did not establish that (1) the firearm was reasonably available to the state and (2) that the firearm was more satisfactory evidence. *Held*: The trial court's failure to give UCrJI 1030 was not error. The destruction of the murder weapon was closest conceptually to the negligent spoliation of evidence, hence UCrJI 1030 was not required. Oregon does not currently have a uniform jury instruction for negligent spoliation, and the Court of Appeals declined to address whether UCrJI 1030 could fill that gap.

Affirmed.

Lindi L. Baker, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Eric Johansen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Kamins, Presiding Judge, and Lagesen, Chief Judge, and James, Judge pro tempore.

JAMES, J. pro tempore.

Affirmed.

**JAMES, J. pro tempore**

Defendant appeals his convictions for murder with a firearm, ORS 163.115 and ORS 161.610, and felon in possession of a firearm, ORS 166.270(1), raising three assignments of error and one *pro se* assignment of error.[1] We reject defendant's first assignment of error—challenging the denial of his motion for judgment of acquittal—without discussion. His third assignment of error, challenging the giving of a nonunanimous jury instruction, is foreclosed by *State v. Ciraulo*, 367 Or 350, 354, 478 P3d 502 (2020), *cert den*, ___ US ___, 141 S Ct 2836 (2021), as the verdicts here were unanimous. We write only to address defendant's second assignment of error, which concerns the state's pretrial destruction of the murder weapon, before the defense could test it. As we explain, the destruction of this evidence is deeply troubling, but the sole challenge on appeal is whether the trial court erred by failing to give Uniform Criminal Jury Instruction (UCrJI) 1030, the "less satisfactory evidence" jury instruction, in response. UCrJI 1030 provides:

"LESS SATISFACTORY EVIDENCE (State's Burden of Proof). The state has the burden to establish the guilt of the defendant beyond a reasonable doubt. When you evaluate the evidence, you may consider the power of the state to gather and produce evidence. If the evidence offered by the state was weaker and less satisfactory than other stronger or more satisfactory evidence that the state could have offered, then you should view the weaker and less satisfactory evidence with distrust."

As we explain, the destruction of the murder weapon here can best be conceptualized as the negligent spoliation of evidence. Oregon does not currently have a jury instruction for negligent spoliation, and whether UCrJI 1030 can fill that gap is an open question, but one we need not resolve. Here, in light of how this case was litigated, the failure to give UCrJI 1030 was not error. Accordingly, we affirm.

---

[1] Defendant's *pro se* assignment of error presents an unpreserved Due Process argument. We typically will not consider claims of error that were not raised in the trial court. *State v. Nordholm*, 293 Or App 369, 372, 427 P3d 211 (2018) (citing *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011)). Further, the error claimed is not appropriate for plain error review in that it is not apparent on the face of the record. We therefore reject that assignment of error without further discussion.

We review a trial court's failure to give a requested jury instruction for errors of law. *State v. Reyes-Camarena*, 330 Or 431, 441, 7 P3d 522 (2000). An instruction is appropriate if it correctly states the law and is supported by evidence in the record, when the evidence is viewed in the light most favorable to the party requesting the instruction. *State v. Oliphant*, 347 Or 175, 178, 218 P3d 1281 (2009). A trial court is not required to give a requested instruction if another instruction adequately addresses the issue. *State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993).

Defendant and the victim met each other for the first time on the day of the murder in August 2013. They were both staying with a mutual friend, and they decided to visit a nearby bar together. Soon after the two men left the bar, the victim suffered a gunshot wound to the head, and his body was found on the side of the road. At trial, witnesses for the state testified that they had seen two men fighting by the side of the road shortly before the victim's body was discovered.

Defendant provided numerous inconsistent and contradictory statements to law enforcement over the course of the lengthy investigation, starting with the night the victim was killed and concluding with his testimony before the jury at trial. On the night of the killing, defendant told police that after an argument, the victim had pulled a gun out of his pocket, handed it to defendant, and asked defendant to shoot him. Next, defendant claimed that he pulled the magazine out of the gun, handed the gun back to the victim, and put the magazine in his pocket. Early the next morning, detectives recorded another interview with defendant. There, defendant explained that he and the victim left the bar and were "playing around," and then the victim "popped himself" and another round fired out of the gun when it fell to the ground. Defendant then picked up the weapon and walked away with it.

About a week after the incident, defendant was interviewed yet again. There, he claimed that when he and the victim left the bar, the victim was swerving because of his intoxication, and defendant tried to keep him out of the road. Defendant saw that the victim had a gun, which he

took from him and cleared it, making it safe. He thought the victim was joking around so he returned the gun to him. The victim then put the gun to his head and shot himself. The victim dropped the gun, which caused another round to fire. Defendant took the gun and left the scene. He returned to the scene after he informed the group that he was staying with that the victim had shot himself.

In December of 2013, several months after the shooting, a resident found a gun in her home's water shut-off valve. The state crime lab determined that the gun was a French-made Unique .22 long rifle caliber semiautomatic pistol. Due to rust, it was not operable; the slide was frozen, and the trigger was immovable. The state lab cleaned the gun, made it operable with a replacement magazine, and test fired it. However, it was not possible to compare the test-fired cartridge to the original cartridge, and the lab could only conclude that the gun had "possibly" fired the cartridge. Additionally, according to the state lab, the firearm could not fire if there was no magazine in it—even if there was a round in the chamber—because it had a magazine safety that precluded firing when the magazine was removed. Finally, if the firearm was dropped, the state lab concluded that it was "unlikely" that it would discharge.

The state possessed the weapon for the next more than three years. In advance of trial, defendant requested the firearm to submit to a defense expert for testing. The state refused, and defendant filed a motion to compel production. The following May, the trial court held a hearing at which the state argued that it should not be compelled to produce evidence to a defense expert that does not meet the state's approval:

> "[DEFENSE]: I have Dr. Ray Grimsbo available by telephone, but I submit, Judge, that we've requested that certain items of evidence be sent to him for analysis. The Court can see his CV in the state's response to the motion to compel discovery. The state has refused to send those to him.
>
> "He's been in practice about 41 years as a private investigator, forensic scientist.

"And if the Court looks at the objection of the state, one of the statements is that first of all they're arguing that he's not a forensic—a firearm—well, that there's no showing of expertise with forensic—firearm forensic discipline. Then the state indicates in their objection that due to the nature of the evidence requested, which is consumable and subject to destruction, the state's not willing to send it because he doesn't show the capabilities in this discipline of forensic firearm—firearm forensic.

"This is evidence that the state obtained in 2013—excuse me, 2014. So it's been about three and a half years. The state has sent these same evidence items up to the—their own lab twice, once back in 2014 and once last year I believe, in 2016.

"So we're talking about a firearm that is inoperable. It was found. It had been out in the weather. So it's inoperable, it's incapable of being fired. And a shell casing that was found at the scene of the alleged crime. So those are the items that we're asking that the state's had for three and a half years. Even if the items were subject to destruction, and I submit they aren't, it's a shell casing and a firearm, since they're not subject to—they can't be destroyed. But the state's had them for three and a half years. They've had them analyzed twice. They've sent them up to the lab for analysis twice. How can the state object?

"And if you look closely at the state's objection, it's like, well, we don't like this expert you've picked, but give us the name of another expert, and we'll tell you if we like the next expert that you pick.

"* * * * *

"They've had it for three and a half years. They don't want to give it up to our expert that we chose who is eminently qualified to look at the evidence.

"* * * * *

"[PROSECUTOR]:   * * * The state is very familiar with Mr. Grimsbo and the reputation that follows him, which is in the DUII realm.

"When you look at his curriculum vitae, outside of his experience in the crime lab 40 years ago, he has nothing on his curriculum vitae that indicates he's done anything in firearms.

"* * * * *

"When you look at his entire history, he has a PhD from a university from back in the '80s when there was no internet, but yet, he received a PhD without acquiring a master's first. So I do question his even, his expertise, because he didn't have a PhD when he was with the crime lab from 1975 to 1985.

"* * * * *

"* * * [T]he state has a right, before releasing evidence that is in the state's custody and control, that the evidence is being presented to an individual who actually has qualifications and the ability to test those items before it's released, and has the qualifications to be able—and the ability, even the technology to do the testing, being that his crime lab is no longer active, that he doesn't appear on his CV to have the expertise in this particular area."

Ultimately, the trial court did not allow the defense expert to test the firearm, and the case continued in a pretrial posture for considerable time. Eventually, there was a change of counsel, but new counsel did not renew the request to test the firearm. Shortly before trial, the weapon was mistakenly classified as found property and destroyed according to the police department's retention schedule for found property. As trial started, the prosecution tried to explain the missing weapon to the jury by claiming

"It had been forensically examined. We had never had a request to keep it or to submit to an expert for the defense. So (indiscernible) forensically we, there was nothing more for us to do other than for you to be able to see it in trial."

The trial proceeded with a picture of the firearm, and only the test results from the prosecution. Defendant requested the less-satisfactory evidence instruction, and the trial court declined to give it. Defendant was ultimately convicted, and this appeal followed.

It bears emphasis what is not at issue here. On appeal, defendant does not assign error to the denial of his motion to compel discovery. Accordingly, we express no opinion on the state's argument before trial that it could precondition disclosure of evidence upon its approval of a defense expert. Nor does he allege that the destruction of

evidence constitutes a constitutional violation under *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). Finally, defendant does not assign error to the prosecutor's statement in opening that the defense had never requested to test the weapon—an assertion that was both patently false, as well as based on facts the state would be unable to introduce into evidence because they did not exist.

The singular question presented is whether the trial court erred in refusing to give the less satisfactory evidence instruction. On appeal, defendant focuses his attention on the destruction of the murder weapon, and he argues that "the state had in its possession crucial evidence about the murder that it destroyed," and that because "the state could have obtained stronger evidence, defendant was entitled to ask the jury to draw an adverse inference from the state's failure to produce that evidence." Defendant continues to explain "[t]hat is the very purpose for which the less-satisfactory-evidence instruction exists." And, he asserts, the error was not harmless because the murder weapon was a crucial piece of evidence: "A defense expert could have discovered some indicia on the gun itself as to who had been holding it at the time it was fired."

The state responds that defendant has failed to satisfy the factual predicates for the less-satisfactory evidence instruction because defendant did not establish that (1) the firearm was reasonably available to the state and (2) that the firearm was more satisfactory evidence. In terms of the availability of the evidence, the state argues that the trial record reflects how and why the firearm was destroyed. Therefore, the firearm was not available to be introduced into evidence. Instead, the state introduced pictures of the firearm and testimony from those who discovered and examined it. Furthermore, the state contends that defendant failed to establish that the presentation of the physical firearm would have been stronger or more satisfactory evidence. Instead, the state claims, defendant's argument is based on the speculation that a defense expert could have discovered some kind of exculpatory evidence on it.

As we explain, we find the state has the better argument in this instance. However, we pause a moment to note

that our resolution of the discrete issue on appeal should not be taken as comfort with what transpired. The state's negligent handling, and destruction, of a murder weapon is profoundly troubling. As we discuss, this case illuminates a potential gap in Oregon law addressing the negligent, as opposed to intentional, destruction of evidence.

## ANALYSIS

Before we turn to the less-satisfactory evidence instruction, it is first necessary to discuss the concept of spoliation. Spoliation is "the destruction of evidence through intent or neglect." Stephen Sheppard, 2 *Bouvier Law Dictionary Desk Edition* 2658 (2012). Spoliation can be intentional in which "a person deliberately alters or destroys evidence, or it may be accidental." *Id.* The remedies for spoliation are diverse, including the presentation of evidence of spoliation, an adverse inference instruction, a rebuttable presumption, or a spoliation claim. Gorelick *et al*, 1 *Destruction of Evidence* § 2.1 (Supp 2022).

Oregon law attaches a presumption to the willful and intentional destruction of evidence. OEC 311(1)(c) creates a presumption that "[e]vidence willfully suppressed would be adverse to the party suppressing it." That statutory presumption, however, does not attach to negligent spoliation. Similarly, no Oregon statute speaks directly to the negligent spoliation of evidence. That absence is not uncommon. Because of the constitutional standards that govern the availability and destruction of evidence in a criminal proceeding, remedial jury instructions, especially for the negligent destruction of evidence, have frequently been overlooked. Scholarship on this subject has observed that "[t]he emphasis on the constitutional and discovery aspects of prosecutorial destruction of evidence has led some courts to a myopic view of the role of the evidentiary spoliation inference in criminal trials." Gorelick *et al*, 1 *Destruction of Evidence* at § 6.3. That myopia has the potential to blur the spoliation doctrine whereby criminal courts analyze spoliation in the context of a due process framework rather than as an evidentiary question. *Id.* In many jurisdictions, absent a violation of due process, a defendant cannot ask for a permissive inference in the face of the state's spoliation of evidence.

Other jurisdictions, however, have recognized the need for an instruction to address the state's negligent spoliation of evidence. In *State v. Willits*, the Arizona Supreme Court noted

> "We think that the rule permitting an inference is not based only on the notion that the destruction is motivated by a desire to conceal the truth. Evidence, of course, may be innocently destroyed without a fraudulent intent simply through carelessness or negligence or, as the case might have appeared to the jury here, an unwillingness to make the necessary effort to preserve it. In any event, the State cannot be permitted the advantage of its own conduct in destroying evidence which might have substantiated the defendant's claim regarding the missing evidence. But the damage to the defendant is equally great because the evidence was no longer available at the trial by which the facts with certainty could be determined."

96 Ariz 184, 393 P2d 274, 279 (Ariz 1964). In *Willits* the instruction took the following form: "If you find that the plaintiff, the State of Arizona, has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against their interest." *Id.* at 276.

Similarly, the Nevada Supreme Court determined that there is "a permissible inference that missing evidence would be adverse *** when evidence is negligently lost or destroyed." *Bass-Davis v. Davis*, 122 Nev 442, 134 P3d 103, 105 (2006). The court drew a distinction between that permissible inference in the case of negligent spoliation in contrast to the presumption afforded when a party willfully suppresses evidence "in which the party destroying evidence intends to harm another party[.]" *Id.* An adverse inference based on negligently lost or destroyed evidence "is tied to a showing that the party controlling the evidence had notice that it was relevant at the time when the evidence was lost or destroyed." *Id.* at 108. In other words, the permissible inference requires the party asking for it to show that the spoliator had a duty to preserve the evidence, which could arise from a court order or the foreseeable use of the evidence in litigation.

In a bridge between negligent and intentional spoliation, the Ninth Circuit Court of Appeals determined that when the government destroys evidence before trial that it was ordered to preserve, bad faith is not necessary for a remedial instruction. *United State v. Sivilla*, 714 F3d 1168, 1172 (9th Cir 2013). In *Sivilla*, a defendant was accused of using a hidden compartment in a jeep to smuggle narcotics across the United States border. *Id*. at 1170. The defendant repeatedly requested an opportunity to inspect the vehicle; however, the jeep was sold and stripped for parts in spite of a court order to preserve it. *Id*. at 1171. Only photographs of the jeep remained, many of them indecipherable, and at trial, the government based its case on specific information about the compartment and how difficult it was for the defendant to remove it. *Id*. The *Sivilla* defendant requested that the court instruct the jury that "'we were not allowed or given an opportunity to inspect the vehicle even though the court had ordered that the government preserve [it].'" *Id*. The Ninth Circuit held that the trial court had erred in refusing to give the jury a remedial instruction. *Id*. at 1174.

A *Sivilla* remedial instruction is conditioned, however, upon the existence of the court order for preservation. And absent such a preexisting order, many courts have resisted instructions in the face of negligent spoliation. *See e.g.*, *United States v. Fries*, 781 F3d 1137, 1152 (9th Cir), *cert den*, 577 US 1029 (2015) (distinguishing the standard in *Sivilla* for a remedial instruction when the government destroys evidence but no bad faith exists from a case in which there was no court order for the preservation of evidence and it was not clear how the destroyed evidence would have benefited the defendant).

We turn now to the less-satisfactory evidence instruction, which finds its statutory grounding in the instructions that trial courts must give "on all proper occasions." ORS 10.095; *see also State v. Payne*, 366 Or 588, 595-98, 468 P3d 445 (2020) (discussing the statutory instructions). Under ORS 10.095, the jury is "to be instructed by the court on all proper occasions" as follows:

"(7)   That evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence

which it is in the power of one side to produce and of the other to contradict; and, therefore

"(8)   That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory evidence was within the power of the party, the evidence offered should be viewed with distrust."

*See also State v. Palacios-Romero*, 320 Or App 563, 565, 514 P3d 137, *rev den*, 370 Or 472 (2022).

To determine whether or not it is appropriate to give the instruction, the court must evaluate whether the party requesting the instruction demonstrated that "other evidence was reasonably available on a fact in issue and that there is a basis for the jury to conclude that the other evidence is stronger and more satisfactory than the evidence offered." *State v. McDonnell*, 313 Or 478, 500, 837 P2d 941 (1992). Therefore, the less-satisfactory evidence instruction must be supported by a showing that (1) the evidence the state did not present was reasonably available, and (2) the evidence was stronger than other evidence the state offered. *State v. Hendershott*, 131 Or App 531, 535-36, 887 P2d 351 (1994), *rev den*, 320 Or 587 (1995).

We have previously used the less-satisfactory evidence framework to analyze spoliation, and the result has been to conflate the two doctrines instead of observing the lack of a negligent spoliation instruction under Oregon law. In *State v. Dream*, 202 Or App 245, 121 P3d 699 (2005), *rev den*, 340 Or 34 (2006), the weapon used in an assault had been discarded before trial. 202 Or App at 249. The defendant argued that the weapon, a 40-ounce beer bottle, might contain some evidence that would be adverse to the state's case thus meriting a less-satisfactory evidence instruction. *Id*. We determined that the defendant had failed to show that "there was any favorable evidence that was lost with the bottle or that the state acted in bad faith in disposing of it." *Id*. at 250. We took that phrasing from *Hendershott* because we noted that *Dream* was "materially indistinguishable from it." *Dream*, 202 Or App at 250. In *Hendershott*, we also briefly referenced the constitutional standard articulated in *Arizona v. Youngblood*, 488 US 51, 56-57, 109 S Ct 333, 102 L Ed 2d 281 (1988). *Hendershott*, 131 Or App at 535. However,

we did not use the terminology of spoliation to address the spoliation of the evidence because our gaze was trained on the demands of either the less-satisfactory evidence instruction or the constitutional due process claim.

Even assuming that a less-satisfactory evidence instruction can be given in instance of negligent spoliation, in the context of this case we cannot conclude that defendant has established that "the evidence was stronger than other evidence offered by the state." *Hendershott*, 131 Or App at 535-36. Defendant's argument is that the picture of the firearm, as opposed to the firearm itself, was "less satisfactory" because it deprived defendant of the ability to test it. Defendant was certainly denied that opportunity—but that is a pretrial discovery issue, one that defendant doesn't raise on appeal. Defendant advances no argument, separate from concerns about pretrial discovery, as to how, in the context of trial testimony, the actual firearm, as opposed to the photograph, was needed in questioning witnesses, or in the jury's evaluation. In this circumstance, the less-satisfactory evidence instruction is not the panacea to cure the collateral consequences the spoliation brought about.

We emphasize again, our task here is narrow: to determine whether UCrJI 1030 was required. It was not. We do not foreclose that *some* instruction here might have been permissible, had it been requested. Nor are we asked to determine whether Oregon law, as currently drafted, provides a statutory basis for a negligent spoliation instruction.

Affirmed.