**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>VICTOR HUGO SIVILLA,<br>*Defendant-Appellant*. | No. 11-50484<br><br>D.C. No.<br>3:10-cr-02966-<br>WQH-1<br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
December 4, 2012—Pasadena, California

Filed May 7, 2013

Before: Harry Pregerson, John T. Noonan,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Noonan

## SUMMARY[*]

### Criminal Law

Affirming in part and reversing in part a criminal judgment and remanding for a new trial, the panel clarified that when the government destroys evidence before trial, a showing of bad faith is required for dismissal but is not required for a remedial adverse-inference jury instruction.

## COUNSEL

Todd Burns, Burns & Cohan, San Diego, California, for Appellant.

Bruce R. Castetter, and Joseph S. Smith Jr., United States Department of Justice, San Diego, California, for Appellee.

## OPINION

NOONAN, Circuit Judge:

This case allows us to clarify what a criminal defendant must show in order to receive relief when the government destroys evidence before trial. We hold that while Supreme Court precedent demands that a showing of bad faith is required for dismissal, it is not required for a remedial jury

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

instruction. We therefore affirm the district court's denial of dismissal and reverse the denial of a remedial jury instruction. We remand for a new trial with a remedial jury instruction.

**FACTS**

Victor Hugo Sivilla owned a business selling perfume in the street markets of Tijuana, Mexico. A few days a week, Sivilla would cross into California to buy perfumes. On the evening of June 2, 2010, Sivilla loaned his gold Jeep Cherokee to his sister-in-law's long-term boyfriend, Josue. Josue kept the car for several hours. On June 4, 2010, Sivilla was in the Jeep, crossing from Tijuana into San Diego County. When he reached the border, Sivilla was directed to a secondary inspection. During the secondary inspection, the inspector noticed that the engine manifold appeared to be hand cut. The case agent and a contract mechanic removed approximately $160,000 worth of cocaine and heroin hidden inside the manifold. The process took about two hours. The case agent took photographs of the engine area of the car and the packages. The photographs are of poor quality. Government agents preserved the packages of drugs.

Sivilla was arrested. Josue was shot dead by unknown persons one month later.

**PROCEEDINGS**

Five days after Sivilla's arrest, his counsel submitted to the government a letter requesting the preservation of evidence seized from the Jeep. On August 16, 2010, Sivilla moved to preserve and inspect evidence; he re-filed the motion on August 20, 2010, when the case received a new

number. In the government's reply, it indicated its general willingness to preserve the evidence and stated that it would take necessary steps to do so until Sivilla could arrange an inspection. On August 30, the district court issued an oral order to the government to preserve the vehicle, indicating that a written order would follow in due course. Then, on September 21, 2010, the district court signed an order granting Sivilla's motion, specifically listing the Jeep among the evidence to be preserved.

Meanwhile, the Jeep was in the custody of the Department of Homeland Security's Fines, Penalties and Forfeitures Section (FP&F). FP&F was preparing the Jeep for forfeiture. It was forfeited on September 22, 2010, the day after the order was signed. The Jeep was transferred to an auction wholesaler.

The case agent, Special Agent Esgate, testified that he was in training outside of the San Diego area on September 23, 2010, when he received a fax from the prosecutor with a copy of the preservation order. He returned to his office on Saturday, September 25, 2010. Esgate sent an email to FP&F that said, in part, "I just received an order to preserve all evidence related to the case. Please do not destroy any evidence until the case has concluded." Esgate and the Assistant United States Attorney on the case both assumed that FP&F would hold onto all evidence and would contact them prior to destroying any of the evidence. They were wrong. The auction wholesaler sold the Jeep on November 23, 2010. It was stripped for parts.

In June 2011, Sivilla requested an opportunity to inspect the vehicle. Then, in July 2011, as the newly-appointed counsel for Sivilla became aware that the Jeep had been sold,

he filed a motion in limine for sanctions in the event that the evidence was destroyed. He renewed the motion in August 2011 and requested dismissal of the indictment, or in the alternative, an instruction to the jury "that Defense counsel had no opportunity to inspect the vehicle because the government failed to preserve the vehicle in violation of a Court order." He argued at the motion in limine hearing that a skilled mechanic could have inspected the area where the drugs were found, estimated how long the drugs had been there, and informed him of the degree of difficulty of placing drugs in and later removing drugs from the vehicle. In particular, the defense wanted to assess whether lifts would have been necessary, whether the drugs would have been accessible if the car were parked on a public street, and whether it would take more than one person to remove the drugs. Sivilla's counsel reiterated that he wanted the case dismissed, and in the alternative and "without waiving my first request . . . that the court instruct the jury that we were not allowed or given an opportunity to inspect the vehicle even though the court had ordered that the government preserve [it]." The judge gave a verbal order denying the motion to dismiss and refusing to grant the jury instruction. The order included the following language: "The court will not inform the jury that defense counsel did not have an opportunity to inspect the vehicle because the government failed to preserve it as ordered. There is no bad faith, and the government has provided photographs of the vehicle and the drugs for use by the defense. However defense counsel is free to explore the facts regarding the failure to preserve the vehicle during trial."

At trial the government based its case on specific information about the engine manifold and how hard it was to remove the drugs from the Jeep. The case agent's

photographs of the engine manifold were admitted as evidence. Many of them are indecipherable.

The defense's theory was that Sivilla did not know that there were drugs in the car – that Sivilla was a so-called "blind mule." Showing that the manifold could be accessed quickly in a public area while Sivilla was away from the car would have strengthened the blind mule theory. If drug traffickers could have accessed the drugs quickly, then the jury might have harbored a reasonable doubt about Sivilla's knowledge that his Jeep contained drugs. The Federal Defender's Office of San Diego, which represented Sivilla, has an investigator on staff who specializes in assessing secret compartments in vehicles. Neither he nor any other expert witness was able to assess the compartment, because the government sold the Jeep. Josue borrowing the car shortly before Sivilla's last crossing, and being killed after Sivilla's arrest, helped to bolster the blind mule theory, but without the ability to rebut the government's evidence about the engine manifold itself, Sivilla could not convince the jury that he was unaware that there were drugs in the Jeep.

The jury returned a verdict of guilty on all four counts. Sivilla received a 120 month sentence. He appealed to this court, arguing that his due process rights were violated by the government's destruction of evidence and that the trial judge erred in denying his motion to dismiss. In the alternative, Sivilla argues that the trial judge erred in requiring a showing of bad faith in order to give a remedial jury instruction.

## ANALYSIS

"Whether a defendant's due process rights were violated by the government's failure to preserve potentially

exculpatory evidence is reviewed de novo. We review factual findings, such as the absence of bad faith, for clear error." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012) (quotation marks and internal citation omitted). "The clear error standard is highly deferential and is only met when the reviewing court is left with a definite and firm conviction that a mistake has been committed." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (citation and internal quotation marks omitted).

In order for destruction of evidence to rise to the level of a constitutional violation, a party must make two showings. First, that the government acted in bad faith, the presence or absence of which "turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56-57 (1988)). Second, that the missing evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Cooper*, 983 F.2d at 931. Another configuration of this test requires the showing of bad faith where the evidence is only potentially useful and not materially exculpatory. *Del Toro-Barboza*, 673 F.3d at 1149. For evidence to be materially exculpatory, its exculpatory nature must be apparent. *Id*.

Under either configuration of the test, the inquiry turns on whether any exculpatory value of evidence in the Jeep was apparent to the government agents. The border agent testified that when he arrested Sivilla, he did not think there was any additional evidentiary value to the vehicle. He was asked whether he thought there was "significant evidentiary value

to keeping the [Jeep] Grand Cherokee itself," and he replied "I did not.  Pictures were taken of the compartment.  You know, pictures were made of the vehicle."  Any exculpatory value of the Jeep itself was not apparent.

The district court did not clearly err in finding that the government did not act in bad faith.  As we explained in *Cooper*, "presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." 983 F.2d at 931. The exculpatory value of the Jeep was not obvious. Thus, while the government was negligent in not preserving the evidence, Sivilla is unable to establish that the government's actions rise to the level of bad faith required by *Youngblood*.  We affirm the district court's holding that there was no constitutional violation and its refusal to dismiss on that ground.

Sivilla argues in the alternative that the district court erred in requiring a showing of bad faith in order to grant the remedial jury instruction.  We review a district court's refusal to give an adverse inference instruction, when properly raised by the appellant, for abuse of discretion.  *United States v. Belden*, 957 F.2d 671, 674 (9th Cir. 1992).  The government argues that Sivilla did not raise this argument in the district court.  In light of the court's ruling on Sivilla's pre-trial motions, we are satisfied that he preserved the issue for appellate review.

Abuse of discretion is a two-part test in this circuit. First, the panel must "determine de novo whether the trial court identified the correct legal rule to apply to the relief requested.  If the trial court failed to do so, [the panel] must conclude [the trial court] abused its discretion."  *United*

*States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009). If the trial court identified the correct legal rule, then the panel "determine[s] whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id*. (internal quotation marks and citation removed).

The district court based its denial of Sivilla's claim on a lack of bad faith. Bad faith is the wrong legal standard for a remedial jury instruction. Sivilla correctly identifies the appropriate legal standard in *U.S. v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979). *Loud Hawk* is an en banc decision with several opinions. The rule governing sanctions for destruction of evidence is found in Judge Anthony Kennedy's 6–5 concurrence. Judge Trask's opinion in *Loud Hawk*, which announced the judgment of the court, suggests a bad faith requirement for sanctions when the government destroys or loses evidence. 628 F.2d at 1146. However, that section of Judge Trask's opinion was not joined by any other members of the en banc panel. We clarify today that Judge Kennedy's concurring opinion, joined by a majority of the en banc panel, clearly controls this issue.

According to Judge Kennedy's controlling concurrence, "[o]ur principal concern is to provide the accused an opportunity to produce and examine all relevant evidence, to insure a fair trial." *Id.* at 1151 (Kennedy, J., concurring). Courts must balance "the quality of the Government's conduct" against "the degree of prejudice to the accused," where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice. *Id.* at 1152.

In evaluating the quality of the government's conduct:

> the court should inquire whether the evidence
> was lost or destroyed while in its custody,
> whether the Government acted in disregard
> for the interests of the accused, whether it was
> negligent in failing to adhere to established
> and reasonable standards of care for police
> and prosecutorial functions, and, if the acts
> were deliberate, whether they were taken in
> good faith or with reasonable justification
> . . . . It is relevant also to inquire whether the
> government attorneys prosecuting the case
> have participated in the events leading to loss
> or destruction of the evidence, for
> prosecutorial action may bear upon existence
> of a motive to harm the accused.

*Id.* Here, evidence was destroyed while in the government's custody. The government was negligent in failing to adhere to reasonable standards of care in its prosecutorial functions. The prosecutor promised to protect the evidence but failed to take any affirmative action to that end. The government attorney prosecuting the case participated in the events leading to the failure to preserve. In total, the quality of the government's conduct was poor.

We now turn to the prejudice to the defendant.

> In analyzing prejudice, the court must
> consider a wide number of factors including,
> without limitation, the centrality of the
> evidence to the case and its importance in
> establishing the elements of the crime or the

motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence.

*Id.  Loud Hawk* turned on the quality of the available secondary or substitute evidence, which in that case was quite high.  *Id.* at 1155–56.  Here, the opposite is true.  Sivilla sought to use his inspection of the Jeep to rebut the prosecution's argument that he must have known that the drugs were in the Jeep because of how long and involved a process it was to remove them from the car. The government introduced the testimony of Officer Cardenas to prove this point. The photographs were the only substitute evidence available to Sivilla to rebut this argument. But the photographs are inadequate because they are pixelated and difficult to decipher.  Any expert witness presented only with the photographs would have concluded that next to nothing could be determined from them.  In order for Sivilla to mount his only defense, that he did not know the drugs were in the car, the defense's in-house expert witness for hidden compartments in vehicles would have needed access to the vehicle itself, not grainy and indecipherable photographs. The prejudice to the defendant was significant.  Applying *Loud Hawk*'s balancing test, a remedial jury instruction was warranted.

**CONCLUSION**

We affirm in part, reverse in part, and remand the case to the district court for a new trial with instructions to grant the defendant a remedial jury instruction.