Filed 10/16/13  P. v. Morales CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALFONSO MORALES,<br><br>    Defendant and Appellant. | B243223<br><br>(Los Angeles County<br>Super. Ct. No. PA072151) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lesley C. Green, Judge.  Affirmed with directions.

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Mary Sanchez and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Alfonso Morales was convicted by a jury of possession of methamphetamine, a controlled substance. On appeal Morales challenges various aspects of the court's jury instructions, including the court's refusal to give an adverse-inference instruction concerning law enforcement's destruction of evidence. He also contends his conviction is not supported by substantial evidence and remand for recalculation of presentence credits is necessary to clarify an inconsistency between the court's oral pronouncements and its minute order. We remand for the limited purpose of recalculating Morales's presentence credits and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Information*

In an information filed January 19, 2012 Morales was charged with one count of possession of a controlled substance, methamphetamine, while incarcerated in the Los Angeles County jail (Pen. Code, § 4573.6).[1] It was specially alleged Morales had served a prior prison term for a 2011 felony conviction (§ 667.5, subd. (b))[2] and suffered a prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Morales pleaded not guilty and denied the special allegations.

### 2. *The Trial*

On November 11, 2011 Morales was an inmate at the North County Correctional Facility, a Los Angeles County detention center in Castaic. While conducting a body cavity search, Los Angeles County Sheriff's Deputy Gabriel Moran noticed the tip of a white latex glove protruding from Morales's anus. Deputy Moran escorted Morales to another room of the jail where he asked Morales what the latex packet (referred to as a "bindle") contained. Morales told him it contained tobacco for himself and "his homies."

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] The information initially alleged Morales had served two prior prison sentences for felonies within the meaning of section 667.5, subdivision (b). The information was later amended to allege only one such prior sentence.

2

At Moran's request, Morales removed the two-and-one-half inch latex packet from his anus and gave it to Moran. Moran confiscated the item and threw away the outer latex wrapping, which was covered in feces. Inside, wrapped in clear cellophane, was a substance that resembled methamphetamine. Several scientific tests confirmed the substance was methamphetamine.[3]

Morales did not testify at trial. His defense theory was the evidence had been manufactured by Deputy Moran; he did not hide any bindle, much less one containing methamphetamine, in his body. Morales's counsel emphasized the failure of the Los Angeles County Sheriff's Department (LASD) to retain the outer latex wrapping and argued, had the wrapping been preserved and tested for DNA, it would have shown it did not belong to Morales.

3. *The Verdict and Sentence*

The jury convicted Morales of possession of a controlled substance. Morales waived his right to a jury trial on the special allegations and, in a bifurcated proceeding, admitted the truth of both the prior serious felony conviction and service of a prior prison term for a felony. The court granted Morales's motion to dismiss the prior qualifying strike conviction under section 1385 in furtherance of justice and sentenced Morales to an aggregate state prison term of five years, the upper term of four years for the possession offense plus one year for the prior prison term enhancement.

**DISCUSSION**

1. *The Trial Court Did Not Err in Failing To Give Morales's Proffered Adverse-inference Instruction Based on LASD's Destruction of Evidence*

    a. *Relevant proceedings*

Prior to trial Morales moved to dismiss the case against him pursuant to *California v. Trombetta* (1984) 467 U.S. 479 [104 S.Ct. 2528, 81 L.Ed.2d 413] (*Trombetta*) based

---

[3] Deputy Moran testified at trial it had been standard practice to discard for health reasons the outer wrapping of a bindle when it had fecal matter, but acknowledged the practice had not been articulated in any policy handbook and had recently been changed to require preservation of such evidence.

on LASD's failure to preserve the latex wrapping.  Following an evidentiary hearing, the court denied the motion, finding no due process violation because the wrapping, which had not been tested for DNA, was only potentially exculpatory and had not been discarded in bad faith.

At trial Morales highlighted LASD's failure to preserve the outer wrapping and argued to the jury, had it been tested, it would have proved the bindle, to the extent one existed at all, did not belong to Morales.  At the close of evidence, Morales proposed the following jury instruction concerning LASD's failure to preserve evidence:  "While in the custody of the investigative agency the following item was destroyed:  latex outer wrapping.  [¶]  You must take the failure to preserve this evidence as indicating that among the inferences which may reasonably have been drawn from this evidence, those inferences most favorable to the defendant are the most probable."  The court refused to give the instruction, explaining its pretrial ruling concerning Deputy Moran's lack of bad faith in throwing away the evidence was dispositive and Morales had no right to an instruction that would mislead the jury into thinking there were inferences "favorable to the defendant which [it would be] bound to apply in this case."

### b. *Governing law*

Law enforcement agencies have a duty under the due process clause of the Fourteenth Amendment to preserve evidence "that might be expected to play a significant role in the suspect's defense."  (*Trombetta, supra,* 467, U.S. at p. 488; *People v. Catlin* (2001) 26 Cal.4th 81, 159-160.)  "'To fall within the scope of this duty, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."'"  (*Catlin*, at pp. 159-160.)  When the evidence is only potentially exculpatory, that is, of the type of which "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" (*Arizona v. Youngblood* (1988) 488 U.S. 51, 57 [109 S.Ct. 333, 102 L.Ed.2d 281]), the destruction or spoliation of such evidence will amount to a due process violation if the defendant can show bad faith on the part of law enforcement.

4

(*Ibid.*; *Catlin,* at p. 160.) The presence or absence of bad faith necessarily turns on law enforcement's knowledge of the potentially exculpatory value of the evidence at the time it was lost or destroyed. (*Youngblood,* at p. 57; *People v. DePriest* (2007) 42 Cal.4th 1, 42.)

Morales does not challenge the trial court's pretrial ruling that no due process violation occurred. He also acknowledges the trial court had no sua sponte duty to give an adverse-inference instruction absent a finding of bad faith destruction of evidence. (See *People v. Medina* (1990) 51 Cal.3d 870, 894 [absent a finding of bad faith destruction of evidence, "the trial court did not err in failing to instruct sua sponte that any conflicting inferences should be drawn in defendant's favor, or that the People's evidence should be viewed with distrust"]; see also *ibid.* ["neither *Trombetta* nor *Youngblood* held that instructions such as those proposed by defendant are required sua sponte, and we are reluctant to impose such an instructional sanction for mere negligence in failing to preserve evidence whose exculpatory value was unapparent to the officers when their omission occurred"].) Rather, he contends the absence of a due process violation is not dispositive on the question whether he was entitled to an adverse-inference instruction and insists such an instruction is required if specifically requested.

An adverse-inference instruction may be an appropriate response to a due process violation based on the bad-faith destruction of potentially exculpatory evidence. (See *People v. Cooper* (1991) 53 Cal.3d 771, 811; *People v. Zamora* (1980) 28 Cal.3d 88, 96.) However, absent bad faith, a defendant is not entitled to any sanction, including an adverse-inference jury instruction, even when such an instruction is specifically requested: "Although an adverse instruction may be a proper response to a due process violation [citation], there was no such violation in this case. The trial court was not required to impose *any* sanction, including jury instructions." (*Cooper*, at p. 811.) Significantly, in reaching this conclusion, the Supreme Court in *Cooper* observed the trial court's refusal to give an adverse inference instruction did not leave the defendant helpless: The trial court properly permitted the defendant to "take his 'best shot' before the jury, and present evidence regarding deficiencies in the investigation to try to

5

discredit the case against him. 'This was adequate to insure a fair hearing and was itself a sufficient sanction.'" (*Cooper,* at pp. 811-812; accord, *People v. Zapien* (1993) 4 Cal.4th 929, 965-966 [trial court's refusal to adopt adverse inference from law enforcement's negligent destruction of evidence was well within its discretion; absent bad faith, no adverse-inference sanction warranted].)

As in *Cooper* and *Zapien* Morales had every opportunity to argue to the jury the prejudice that resulted from the failure to preserve the outer wrapping. Nothing more in this case was required to ensure a fair trial. (*Cooper, supra,* 53 Cal.3d at pp. 811-812; *People v. Zapien, supra,* 4 Cal.4th at p. 965.)

The recent case of *United States v. Sivilla* (9th Cir. 2013) 714 F.3d 1168 (*Sivilla*), on which Morales relies, does not compel a different result.[4] Sivilla was charged with transporting drugs from Mexico into the United States. Federal law enforcement authorities had found the drugs hidden in the engine manifold of his Jeep. Sivilla argued he did not know the drugs had been hidden in the vehicle and wanted to show at trial that the manifold could have been accessed quickly by someone else while he was in a public area and away from the car. However, apparently unaware of a court order requiring preservation of the vehicle, law enforcement officials transferred it to an auction wholesaler, who sold it. By the time the Jeep was found, it had been stripped of parts. (*Id.* at p. 1171.)

In a pretrial trial evidentiary hearing, the federal district court found the evidence had not been destroyed in bad faith and denied Sivilla's motion to dismiss the case and also denied his alternative motion to instruct the jury that the defense "'[was] not allowed or given an opportunity to inspect the vehicle even though the court had ordered that the government preserve [it].'" (*Sivilla, supra,* 714 F.3d at p. 1171.) In denying the requested instruction the district court stated, "The court will not inform the jury that defense counsel did not have an opportunity to inspect the vehicle because the

---

4 Because *Sivilla* was decided after briefing was completed, we granted requests from Morales and the People to submit supplemental briefs to address the case.

6

government failed to preserve it as ordered.  There is no bad faith, and the government has provided photographs of the vehicle and the drugs for use by the defense.  However defense counsel is free to explore the facts regarding the failure to preserve the vehicle during trial." (*Id.* at p. 1171.)

The Ninth Circuit Court of Appeals affirmed the lack-of-bad-faith finding, but reversed the district court's ruling denying the requested jury instruction: "[W]hile Supreme Court precedent [in *Trombetta* and *Youngblood*] demands that a showing of bad faith is required for dismissal, it is not required for a remedial jury instruction." (*Sivilla, supra,* 217 F.3d at p. 1170.)  The court held, when the issue is whether a remedial instruction relating to the destroyed evidence is proper, the question is not whether the evidence was destroyed in bad faith, but whether the requested instruction is necessary to ensure a fair trial.  This inquiry requires the court to balance the "'quality of the Government's conduct' against 'the degree of prejudice to the accused,'" considering such factors as "'the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant'" and the probative value of the substitute evidence. (*Sivilla,* at p. 1173.)  Applying this "balancing test" to the facts in the record before it, the *Sivilla* court found the quality of the photographs of the vehicle so poor that the proffered remedial jury instruction making clear the defense's inability to inspect the vehicle was warranted, and the failure to give it prejudiced the defense. (*Id.* at p. 1174.)[5]

We are, of course, not bound by the Ninth Circuit's holding (see *People v. Bradley* (1969) 1 Cal.3d 80, 86 ["although we are bound by decisions of the United States Supreme Court interpreting the federal constitution [citations], we are not bound by the decisions of the lower federal courts even on federal questions"]; *People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1586-1587 [same]), nor are we persuaded it has any application here.  Contrary to Morales's suggestion, *Sivilla* does not hold that an adverse-

---

[5]     The Ninth Circuit emphasized that at trial the government had based its case on specific information about the engine manifold and how hard it was to remove the drugs from the Jeep.  (See *Sivilla, supra,* 714 F.3d at p. 1171.)

7

inference instruction is warranted even in the absence of bad faith. Rather, it simply recognizes that there may be circumstances where some type of remedial jury instruction (other than one that sanctions the prosecution) is necessary to protect a defendant's right to a fair trial. (*Sivilla,* at p. 1174; see *People v. Sixto* (1993) 17 Cal.App.4th 374, 398 ["It is settled that trial courts 'enjoy a large measure of discretion in determining the appropriate sanction that should be imposed' because of the failure to preserve or destruction of material evidence. [Citations.] [¶] The same standard should apply where, as here, there has been no sanctionable failure to preserve, but the defendant claims particular admonitions or other measures are necessary to assure him a fair trial"].) Whatever merit there may be to that analysis in other circumstances, here the trial court gave Morales wide latitude and ample opportunity to apprise the jury of the potentially exculpatory nature of the discarded outer wrapping, which Morales's counsel did repeatedly throughout the trial. As in *Cooper,* nothing more was necessary to protect Morales's right to a fair trial. (*People v. Cooper, supra,* 53 Cal.3d at pp. 811-812.)

2. *Substantial Evidence Supports the Finding Morales Knew the Nature of the Substance He Possessed*

Section 4573.6 provides that any person who knowingly possesses "any controlled substance[], the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code . . ." while in any penal institution "is guilty of a felony punishable by imprisonment . . . for two, three, or four years." Methamphetamine is one of the controlled substances prohibited by Division 10 of the Health and Safety Code. (Health & Saf. Code, § 11055, subd. (d)(2).)

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.'" (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242; accord, *People v. Martin* (2001) 25 Cal.4th 1180, 1184.) Thus, for example, "knowledge of a substance's narcotic nature may be shown by evidence of the defendant's furtive acts and suspicious conduct indicating a consciousness of guilt, such as an attempt to flee or

8

an attempt to hide or dispose of the contraband [citations], or by evidence showing a familiarity with the substance, such as needle marks or other physical manifestations of drug use or instances of prior drug use . . . ." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 956; accord, *People v. Williams* (1971) 5 Cal.3d 211, 215-216.)

Morales contends there was insufficient evidence he knew the substance he possessed was methamphetamine.[6] Although he concedes the fact he hid the drugs in a body cavity typically would be sufficient evidence of his knowledge of the substance's controlled nature (see, e.g., *People v. Martin* (2008) 169 Cal.App.4th 822, 826 & fn. 3 [substantial evidence of knowing possession existed where controlled substance hidden between two socks worn by defendant on one foot]; *People v. Rushing* (1989) 209 Cal.App.3d 618, 622, fn. 2 [jury could reasonably infer defendant knew of the controlled nature of cocaine in his possession by the fact it was hidden in a WD-40 can with a false bottom]), he argues no such inference is reasonably made in these circumstances because in jail even noncontrolled substances such as tobacco are banned. The hiding of the substance suggests only that he knew it was contraband, not that it was a controlled substance.

---

6  In reviewing a challenge to the sufficiency of the evidence, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Morales's "innocent" explanation for secreting the latex packet inside his body—he thought it was tobacco—was not argued at trial. Instead, his theory was the evidence was planted and he neither concealed the item nor told the deputy that it contained tobacco. The jury rejected that defense, finding Morales did conceal the latex package in his anus. We need not consider, therefore, whether concealment may be sufficient evidence of knowledge under circumstances where there is evidence a defendant believed the item he concealed contained contraband other than a controlled substance. Morales's active concealment under the circumstances in this case, and his lying about what the package contained, are substantial evidence he knew the substance was methamphetamine. (See *People v. Martin, supra,* 25 Cal.4th at p. 1184 [furtive acts reflecting consciousness of guilt provide substantial evidence of knowledge of nature of controlled substance]; *People v. Maury* (2003) 30 Cal.4th 342, 399 [jury could reasonably infer defendant's lies to police reflected a consciousness of guilt].)

3. *The Trial Court Adequately Instructed the Jury on Controlled Substances*

Morales contends the trial court erred in failing to sua sponte define the term "controlled substance." He argues that, without a proper definition, the jury could have reasonably understood the term "controlled substance" to include all contraband in the jail, including tobacco. Contrary to Morales's contention, the jury was specifically instructed with CALCRIM No. 2748, which expressly identified methamphetamine as a controlled substance and informed the jury it must find the substance he was accused of possessing was methamphetamine in order to convict Morales of this crime.[7] His argument the court had a sua sponte duty to further define the term "controlled substance" is without merit.

_____

[7] The jury was instructed, "The defendant is charged in Count 1 with possessing methamphetamine, a controlled substance, in a penal institution in violation of Penal Code section 4573.6. To prove that the defendant is guilty of this crime the People must prove that . . . the defendant knew of the substance's nature or character as a controlled substance. The controlled substance that the defendant possessed was methamphetamine."

10

4. *The Trial Court Properly Instructed the Jury on Circumstantial Evidence*

Morales contends the court erred in instructing the jury with the broader explanation of circumstantial evidence contained in CALCRIM No. 224[8] rather than the more specific language in CALCRIM No. 225, which focuses on the use of circumstantial evidence to establish the intent or mental state required for an offense.[9]

The trial court is obligated to instruct the jury on the general principles of law relevant to the issues raised by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 147-148.) The court has a sua sponte duty to instruct on principles of circumstantial

---

[8] CALCRIM No. 224 provides, "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

[9] CALCRIM No. 225 provides "The People must prove not only that the defendant did the act[s] charged, but also that (he/she) acted with a particular (intent/ [and/or] mental state). The instruction for (the/each) crime [and allegation] explains the (intent/ [and/or] mental state) required. [¶] A[n] (intent/ [and/or] mental state) may be proved by circumstantial evidence. [¶] Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to conclude that the defendant had the required (intent/ [and/or] mental state), you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required (intent/ [and/or] mental state). If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required (intent/ [and/or] mental state) and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required (intent/ [and/or] mental state) was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

11

evidence whenever the People are relying on such evidence.  (*People v. Wiley* (1976) 18 Cal.3d 162, 174; *People v. Yrigoyen* (1955) 45 Cal.2d 46, 49.)

"CALCRIM No. 225 is to be used in place of CALCRIM No. 224 'when the defendant's specific intent or mental state is the only element of the offense that rests substantially or entirely on circumstantial evidence.'  [Citations.]  CALCRIM Nos. 224 and 225 provide essentially the same information on how the jury should consider circumstantial evidence, but CALCRIM No. 224 is more inclusive."  (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1171-1172; see *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1141-1142 [CALJIC No. 2.01, the predecessor to CALCRIM No. 224, is "more inclusive" than CALJIC No. 2.02, the predecessor to CALCRIM No. 225].)

We need not belabor Morales's contention the trial court had a sua sponte duty to give CALCRIM No. 225 rather than the "more inclusive" CALCRIM No. 224.  As the Supreme Court observed in addressing a similar argument, because the trial court "delivered the more inclusive instruction" on circumstantial evidence, its refusal to additionally instruct with CALJIC No. 2.02 [CALCRIM No. 225] clearly was not prejudicial error even under the most stringent beyond-a-reasonable-doubt standard.  (*People v. Rodrigues, supra,* 8 Cal.4th at p. 1142; accord, *People v. Samaniego, supra,* 172 Cal.App.4th at p. 1172.)

5.  *Remand Is Necessary for the Court To Clarify Presentence Custody Credits*

Both Morales and the People identify a discrepancy between the trial court's oral pronouncement awarding Morales a total of 444 days of presentence credit (222 actual custody days and 222 days of conduct credit) and the minute order awarding him 544 days of presentence credit (272 actual custody days and 272 days of conduct credit).[10] Morales urges this court to remand for recalculation of presentence credits because it is

_____

10     The court based its presentence custody credit calculation on defense counsel's representation.  At sentencing the court inquired, "I am asking for some input.  What are the custody credits?"  Defense counsel replied, "222 actual, plus 222 good time/work time, for a total of 444."  Asked by the court if he agreed, the prosecutor merely replied, "submit."

12

impossible to tell from this record which calculation of credits, if either, is correct.[11] We agree.[12]

If presence credits are calculated from the date of his arrest, November 10, 2011, Morales would be entitled to 546 days of presence credit (273 actual custody days and 273 days of conduct credit), rather than the 444 days of presence credit calculated by defense counsel or the 544 days awarded in the court's minute order. Ordinarily, it would be a simple matter for this court to modify the sentence to reflect the appropriate presence credits calculated from the time of his arrest to sentencing. However, at the time of his arrest on the current offense, Morales was serving a sentence on an unrelated offense and is not entitled to presence custody credits for the time served on that offense. (See *In re Rojas* (1979) 23 Cal.3d 152, 154, 156-157 [criminal defendant not entitled to presence custody credit when during same period defendant was simultaneously serving a prison term for a prior unrelated offense].) Because we cannot determine from the record when Morales completed his sentence on the prior offense,[13] remand is necessary for the limited purpose of determining the presence custody credits to which Morales is entitled.

---

[11] Because Morales committed the current offense after October 1, 2011, his presence custody credits are calculated in accordance with the two-for-two calculation authorized in the current version of section 4019. (See § 4019, subd. (h) [for offenses committed prior to Oct. 1, 2011, presence credit shall be calculated "at the rate required by the prior law"]; *People v. Brown* (2012) 54 Cal.4th 314, 322.)

[12] The People urge us to modify the minute order and abstract of judgment, citing the general rule that, in the event of an inconsistency, the court's oral pronouncement prevails over the clerk's minute order. (See *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 [court's oral pronouncements are best indicator of intent and prevail over clerk's minute order].) The amount of presence credits, however, is mandated by statute. The question is not what the trial court intended, but whether the sentence is authorized.

[13] It may be that Morales completed his sentence on the prior offense on December 31, 2011. If so, the court's oral pronouncement of 444 days of presence custody credit, calculated from January 1, 2012 to the date of sentencing, would be correct.

13

## DISPOSITION

The matter is remanded for the limited purpose of determining and awarding presentence credits pursuant to section 4019, excluding from that calculation the time Morales was confined on a separate, unrelated offense.  In all other respects, the judgment is affirmed.

PERLUSS, P. J.

We concur:

WOODS, J.

ZELON, J.

14