**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10364 |
| Plaintiff - Appellee, | D.C. No. 4:15-cr-00267-RCC-DTF-1 |
| v. | |
| FEDERICO GONZALEZ-HERNANDEZ, AKA Federico Gonzalez, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief Judge, Presiding

Submitted July 6, 2016[**]
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: BERZON, and N.R. SMITH, Circuit Judges, and ZOUHARY,*** District Judge.

Gonzalez-Hernandez appeals his conviction, alleging (1) that the Government violated his due process rights by failing to preserve potentially exculpatory evidence, i.e., two photographs of a bush splattered in blood from the scene of the altercation, and (2) that there was insufficient evidence. We affirm.

1. "[F]or destruction of evidence to rise to the level of a constitutional violation, [the defendant] must make two showings." *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). First, the defendant must demonstrate "that the government acted in bad faith, the presence or absence of which turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *Id.* (quoting *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993)). Second, the defendant must show "that the missing evidence is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)).

The district court did not clearly err in concluding that the Government acted without bad faith. There is no evidence that U.S. Border Patrol Agent Travis

***  The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

2

Peterson's destruction of his cellular phone, and the resultant loss of the photographs on that phone, was anything but an accident. Although it would have been preferable for Peterson to have promptly submitted all photographs related to the crime rather than maintaining them only on his cellular phone, his failure to do so was at most negligence, not bad faith. *See Sivilla*, 714 F.3d at 1172; *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Moreover, there is no indication that the Government was aware of any exculpatory value of the photographs, and it is quite doubtful that they had any. *See United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015). Even if the photographs could have conclusively shown that one particular bush did not cause the laceration, Gonzalez-Hernandez could have been injured by another bush. So the photographs could not have corroborated Gonzalez-Hernandez's assertion that he was injured while acting in self-defense. Moreover, the court issued a limiting instruction to the jury at Gonzalez-Hernandez's request, thereby mitigating any possible prejudice.[1]

---

[1] Gonzalez-Hernandez's case is not analogous to *Zaragoza*. In *Zaragoza*, the agent knew the recordings would be automatically recorded over, and knew of the exculpatory value based on an interview with the defendant. 780 F.3d at 977, 979. Here, there was no evidence that the Border Patrol agent knew of an exculpatory reason to keep the photos. Further, there was no evidence that the photos were intentionally destroyed.

Accordingly, we affirm the district court's holding with regard to the destruction of evidence.

2. The district court properly denied Gonzalez-Hernandez's Rule 29 motion to dismiss, as the record contains sufficient evidence to sustain the conviction.

To determine whether there was sufficient evidence to support a conviction, we look to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Here, the United States presented sufficient evidence—viewing the evidence in the light most favorable to it—to sustain Gonzalez-Hernandez's conviction under 18 U.S.C. § 111(a)(1). That provision makes it a crime to "forcibly assault[] . . . [a federal officer] while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1). Only general intent is required, not the specific intent to injure. *United States v. Sanchez*, 914 F.2d 1355, 1358 (9th Cir. 1990).

A reasonable fact-finder could have concluded that the Government proved all three elements of the offense. Pinkerton testified that upon being discovered Gonzalez-Hernandez resisted detention, hitting the agent several times with closed fists. Pinkerton went on to state that he then moved closer to Gonzalez-Hernandez

4

in an attempt to reduce the force of the blows, and that Gonzalez-Hernandez shoved off him to try to get away. Gonzalez-Hernandez testified in his defense that when he saw Pinkerton, he knew it was his last chance to escape, somewhat corroborating Pinkerton's version of events. Given this testimony, a reasonable fact-finder could have found that Gonzalez-Hernandez acted intentionally and that he forcibly assaulted Pinkerton.

A reasonable fact-finder could also have concluded both that Pinkerton was "engaged in . . . the performance of [his] official duties" when the altercation occurred, and that Gonzalez-Hernandez assaulted him "on account of the performance of [his] official duties." *See* 18 U.S.C. § 111(a)(1). There is no dispute that Pinkerton was performing his duties as a border patrol agent when he spotted, pursued, and arrested Gonzalez-Hernandez. Both Pinkerton and Gonzalez-Hernandez's testimony supports the conclusion that Gonzalez-Hernandez punched and shoved Pinkerton to avoid being arrested, and so "on account of" Pinkerton's performance of his duties.

Gonzalez-Hernandez asserts that he acted in self-defense and testified to that effect at trial. Having heard from both Agent Pinkerton and Gonzalez-Hernandez, the jury resolved the inconsistencies in the testimony in favor of the Government. While Gonzalez-Hernandez was more severely injured than Pinkerton by the

5

altercation, the asymmetry of the injuries does not demand the conclusion that Gonzalez-Hernandez acted in self-defense. Ample evidence supports a finding that Gonzalez-Hernandez was the aggressor and that Pinkerton only did what was necessary to restrain him.

Accordingly, the district court properly denied Gonzalez-Hernandez's Rule 29 motion.

**AFFIRMED.**